The sixth and last case of the day, Dubey v. Department of Homeland Security Mr. Wobston. Thank you. I think it's still the morning, so good morning, Your Honor. May it please the Court, my name is John Wobston. I'm representing the plaintiffs in this case. From the outset, I just want to highlight, obviously, immigration is a hot-button issue right now. But this is not a Republican issue, this is not a MAGA issue, this is not a Democrat issue. This is a systemic issue with an agency that's somewhat gone amok and gone awry. So the ultimate question here is, can DHS evade its APA responsibilities, and even its own regulatory responsibilities in adjudication, by making decisions secret and waiting for people to leave the country and alerting CBP that there's been a decision made against them? Can they hide behind expedited removal and avoid their other legal responsibilities? The government, in their brief, cites PAC v. Biden as saying, you know, the jurisdictional stripping provisions. But here you can divorce the issues. And the timeline of events here shows that, as well as the statements that were taken, the I-831s that were taken. In what way can you avoid this statute, given its language? I understand your argument that we aren't attacking the exclusion at the border, we're attacking the reason for that exclusion. But every exclusion has a reason. If you say, well, we can go ahead and attack the reason, the statute just crumbles into dust. It would never apply at all. So, Your Honor, if you take it a step further, though, let's just apply a real-world hypothetical. If you're an Indian national waiting for an immigrant visa, your green card, you have a 20-year wait from the time that it's approved. You can stay in the country as long as you have an initial approved H-1B visa that you got in a lottery. You could be days away from getting your green card, coming back into the country, and CBP could say, hey, your initial H-1B visa has been revoked. You can't stay in the country. I understand that the world is full of injustices and unfortunate events. I'm asking you about a statute. So I guess it's a question of which statute takes priority. Does the APA that requires certain decisions? The first thing any court has to assure itself of is subject matter jurisdiction. We have a statute limiting subject matter jurisdiction. The Administrative Procedure Act says that it drops out when some other statute precludes review. That's Section 701A1, which I notice your brief doesn't even mention, right? So we are driven to discuss the statute precluding review, and we still have my question, which you have not addressed. If we go with that interpretation, Your Honor, there is no process that the government has to follow in immigration. Things that would ordinarily be challengeable in court, petition for judicial review, could all be avoided on the government side if all they have to do is make a secret determination and wait for you to leave the country and come back. You're not addressing the language of the statute or its interpretation either in this circuit in O'Day or elsewhere. I completely understand your argument that government should not be allowed to make secret decisions, but the first question is jurisdiction. So I guess it's a question of what does related to mean? And here I would say related to cannot mean things that happened long before the application for admission to the United States. The visa revocation decision is the reason why your clients were turned away at the border. The very reason is related to being turned away at the border. So the visa revocation is not the issue that we're challenging, Your Honor. It's the fraud finding that imposes a lifelong penalty. Which led to the visa revocation. Again, if the lifelong penalty is not in play, CBP can do expedited removal and send them on their way. Then you'd have to go back to the consulate and you'd have to get a new visa. Or first you'd have to get a waiver if you're in admissibility for that five year span. But the permanent bar to admission to the United States is what they're challenging. They're not challenging the consequences or the impact of the removal order or the visa cancellation. If they're not challenging it, how do they have standing? They're challenging the fraud finding, Your Honor. Yes, but if they are not challenging their being turned away at the border, how do they even have standing? Because the fraud finding imposes a lifelong penalty. And it's its own administrative action, its own final agency action. It's a separate adjudication that takes place within each visa petition adjudication that happens within USCIS. So we're back to your proposition that although you can't challenge the removal or non-admission order, you can challenge the reasons for it. And that's the question I'm asking. Since every order ultimately has reasons, what in your view is left for the operation of this statute? So, Your Honor, if you come to the port of entry and you're questioned, there's suspicion arises, and you get asked questions by CBP, and you provide information. You get asked questions by what? What's that? You get asked questions by you, then you get some initials. Oh, customs and border. If you could use real words, that would help us. My apologies, Your Honor. So if you were to, if CBP is to organically come up with. If you could use real words. My apologies. I know that may be hard. Customs and border could make their own organic determination, and that would not be challengeable. That fraud finding would stick. But where they're going back in time and trying to adopt a USCIS decision. I don't get it. You can't challenge the reasons if somebody is being completely arbitrary and high-handed at the border, but you can challenge the reasons if they're not arbitrary and high-handed. So that seems perverse, doesn't it? Welcome to my world in immigration law. But, yes, I would say that Congress set that in place, that customs and border patrol can be as arbitrary as they want to be at the border and turn you around. Now, Congress also said that, and the agencies have adopted this by regulation, that there's certain things they have to do before they make a decision. And one of those things is give you the adverse information that they intend to rely on, as well as give you an opportunity to respond. And those are the things that obviously were short-circuited or bypassed here. If you look at the 831s for Dubé and Gacy, you see that there is no knowingly false statement that is identified or specifically stated. And the reason for that is because there isn't one. So the way that OPT works is you are in school, post-completion OPT. You're in school. You file your application. You don't have a job offer yet, but you can file your application to get your employment authorization document. Then you graduate, and once you have your employment authorization document, that can take six months to adjudicate. Then you can seek employment, and then you can start working in the U.S. So at the time they make their representation to the government that they're seeking OPT, they don't know who their employer is going to be, and that's completely permissible under the rules. And what Customs and Border Patrol is saying is that just by merely being associated with one of these companies that are a suspect to DHS, that that qualifies as a false statement. And that clearly doesn't track with what the law in 1182A.6C.I. says. The other issue is that it shows that it's not a Customs and Border Protection issue, is that Customs and Border have no authority, no regulatory overview of this OPT program. That is entirely a USCIS issue. And so any questioning that Customs and Border does is going to be based solely on information derived from USCIS. And again, that short-circuits the whole opportunity to respond to adverse derogatory information. So what's the category of cases that you think are reviewable? So it would be cases where USCIS makes a decision, enters it into one of their databases that is shared with Customs and Border Protection, and then Customs and Border Protection acts on it. A decision made by Customs and Border Protection of their own deliberation, that would not be reviewable. Thank you. And I think that's consistent with O'Day. Because in O'Day, you have somebody who's coming to the U.S. and being questioned at the port of entry, and Customs and Border Protection makes the fraud finding. Here, we have the fraud finding while they're actually in the United States. The plaintiffs are in the U.S., the fraud finding occurs, they leave the U.S., and only find out about it on their way back. So if they'd left before the fraud finding was made, then there would be no review. Well, there'd be no notice that they could give them because they'd be out of the country. Okay. Thank you. And I'm out of time. I'll just thank you. Thank you, Counsel. Mr. Pretz.  Good morning. May it please the Court, Counsel. We believe that this is actually a pretty straightforward case under two decisions of this Court. One would be O'Day, which Judge Easterbrook, you referenced, and the other would be Matushkina, which Judge Hamilton, I believe you authored for the Court. Both of those cases involve an extremely similar fact pattern to what we have here, i.e., a foreign national going to O'Hare Airport. Not all of the foreign nationals involved in this case went to O'Hare. I think one of them went to Logan Airport in Boston. We argue for severance based on these separate transactions or occurrences. The District Court did not agree with us there. But the bottom line is that in O'Day, Matushkina, and this case, we have foreign nationals coming back on a visa, well, coming into the United States on a visa. CBP interviews them at primary inspection. I'm sorry, Customs and Border Protection interviews them at primary inspection. And then they see some information or they get information based off the feedback from the applicant for admission. And they bring them into secondary inspection. Then they start to have a more fulsome conversation. That is, Customs and Border Protection has a more fulsome conversation about the applicant's relationship or misrepresentations to either the consular officer or the USCIS or both. And fraud findings were made in all three of the cases, O'Day, Matushkina, and here. In Matushkina, the clever argument that the plaintiff tried to use to get around consular non-reviewability was, I'm not attacking the visa denial. I'm attacking the underlying agency determination of inadmissibility. Very similar to what we have here. In O'Day, the argument was, I'm not attacking expedite removal because I was allowed to voluntarily depart. I'm only attacking the inadmissibility determination. Again, very similar to what we have here. There are antecedent determinations that were made, in this case, by CBP. Plaintiff wants to allege that they were made by USCIS, but that is not true. If it was true or if it were true, rather, there would be no need for CBP to do any follow-up interview. And there were interviews of these plaintiffs in secondary inspection. And the CBP officer found that he or she was being effectively lied to or that there was misrepresentation. The exact same type of thing that was going on in O'Day, the exact same type of thing that was going on in Matushkina. When Mr. Watson talks about some sort of lifelong ban, what he means by that is this information, that the plaintiffs in this case were caught up with companies that were abusing the optional practical training program. And by abuse, I mean they were letting students come in and say that they worked or did work study for those companies. They never actually did any work study. We understand that if these students were innocently caught up in that, that could be a problem. Customs and Border Protection did not believe their stories that that was innocent. And Customs and Border Protection, therefore, entered orders of removal or expedited orders of removal for four of the five plaintiffs in this case. The other plaintiff, Mr. Gates, was allowed to voluntarily depart. He thereafter applied for a visa and was denied based off this exact same transaction or occurrence. Extremely similar to the Matushkina case that this court decided about eight years ago. Whichever way you cut it, if they're trying to attack a decision or an antecedent determination that occurred months or years prior to the final agency action that's actually involved in this case, there would be a standing problem, as Justice Easterbrook was alluding to. If you try to attack from the consular denial of a visa for Mr. Gates, one of the plaintiffs, you'd have consular deniability, you'd run into Matushkina. If you try to attack the expedited removal order by saying, aha, I'm not attacking the order itself, I'm just attacking one of the reasons for the order, then you run into O'Day. And so each area that the plaintiff wants to try to go to is impenetrable. We understand that this seems abrupt, but that's why in our brief we do cite to numerous cases where executive decisions at the border or at port of entries for exclusion, that is, to prevent someone from coming in to the United States who is a foreign national, those are unreviewable. And that's why Congress has sort of set up the statute to be that way. They got tired of exceptions being found to that general rule and made it crystal clear in 1252A12A. I understand that that's an unwieldy citation, and I apologize on behalf of the executive branch for constructing it that way. However, we don't write the statutes. We only try to enforce them and make sure that this Court gets it right from our end. So the language in that, notwithstanding any other provision or law, statutory or non-statutory, including habeas corpus, although there are exceptions with habeas corpus, as the Supreme Court articulated in Thurasigium and applied in Thurasigium, we think that language is very clear, that the APA is not an end run, and in fact decisions from this Court have also stated that the APA is not going to be particularly helpful in the immigration exclusion context. Unless there are any questions, we would ask that this Court affirm the judgment below. Thank you very much, Counsel. The case is taken under advisement, and the Court will be in recess. Thank you.